## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MICHAEL JONES,

            Plaintiff,

    v.

HORIZON TRUST COMPANY,
HORIZON TRUST COMPANY
FBO RICHARD SMITH IRA,
and RICHARD SMITH,

            Defendants.

Case No. 17-11304
Hon. Terrence G. Berg

## OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.    Introduction

Plaintiff tripped on the top of an open pipe in the driveway of a home in Detroit that he was renting from Defendants. Plaintiff's resulting physical injuries required surgery and prevented him from working, and he now alleges that Defendants had a duty to fix the driveway area where he tripped. Defendants include Horizon Trust Company, an IRA account managed by Horizon Trust Company in Richard Smith's name (styled as "Horizon Trust Company FBO ["for the benefit of"] Richard Smith IRA") and Richard Smith. Defendants claim that the home was owned solely by Horizon Trust

Company FBO Richard Smith IRA, and that Richard Smith and Horizon Trust Company did not own, possess, or control the property. Defendants also claim that the protruding pipe on which Plaintiff allegedly tripped is a water pipe owned by the City of Detroit, and that they could not legally do anything to fix it. Alternatively, Defendants also claim that they contracted with a property management service and that if anyone had a duty to fix the pipe, it was the management company. For the reasons outlined below, Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

## II.   Background

In March 2015, Plaintiff rented a home at 9400 Piedmont in Detroit. Jones Deposition, Dkt. 28-5, PageID.228. He signed a lease with the then-owner of the house, Sincere Investments, LLC, and provided their representative with a list of repairs that needed to be made at the property. Dkt. 28-5, PageID.227. That list included the open pipe in the driveway, the concrete in the driveway, the back porch area, the basement windows, a leaky bathtub, and the front door lock. *Id*. That list also mentioned that the home lacked smoke alarms and needed "lighting in the back on the side of the house for security." *Id*.

After attempting unsuccessfully to contact the person to whom he gave the letter, Plaintiff researched online to find out who the

owner of the property was. *Id*. at PageID.228. This is when Plaintiff discovered that Stellar Property and Management Group ("Stellar") was now managing the property. *Id*. Plaintiff spoke to someone at Stellar in person, and was informed that Stellar had to speak with the new owner to get approval to do the repairs he mentioned, but that they could not share the new owner's name. *Id*. at PageID.230. The back porch area was eventually fixed, but *none* of the other issues—including the open pipe in the driveway—was ever addressed while Plaintiff lived at the Piedmont house. *Id*. Stellar office manager, Michelle Goode, testified that on June 22, 2015, Plaintiff created the following work order:

> [T]he tenant mentioned that his furnace was replaced on Easter, and the old one plus debris has not been removed from his basement. Also tenant mentioned that when he moved in he was promised that the basement windows would be redone and the block windows will be installed. This has not happened and now ants are coming into the basement window and are around the home. The tenant is now requesting that the home is to be sprayed for the ant infestation.
> The tenant also indicates that floods happen whenever it rains and pipes back up. The tenant also reports bathroom window screen is cut up. Tenant mentioned that the tub was reglazed and he discovered that it was not reglazed but painted, and now he can see the dirt from the tub from the previous tenant which was trying to clean the tub. Gutters need to be cleaned out. Back porch is falling down. Tenant also reports that bedroom outlets are falling off the wall and various outlets in the home does not work. All garage lights are inoperable.

Goode Deposition, Dkt. 34-6, PageID.464–65. Ms. Goode then said that the notes on the next page indicated "that the owner has clearly stated that he will handle his own repairs." *Id*. at PageID.465.

On July 31, 2015, at approximately midnight, Plaintiff arrived home after a night out with his girlfriend, Chanel Colona. Dkt. 28-5, PageID.231. Plaintiff exited Colona's car at the curb, and started to walk up the driveway towards the rear entrance of the home. *Id*. at PageID.232. Plaintiff testified that he regularly used the rear entrance, because the front door lock did not work well, and he did not feel safe standing outside of his home at night. *Id*. at PageID.239. Plaintiff said that as he walked up the driveway, he "stepped into that hole that's there and the nose of my foot got caught in there, so I fell and broke my leg." *Id*. at PageID.232. Plaintiff sustained serious injuries to his foot that required surgery. Dkt. 28-5, PageID.226.

### a. Ownership of the house

Defendant Richard Smith is a resident of California, and as part of a retirement investment portfolio, he owns several properties, including the home where the injury occurred in this case, which is located at 9400 Piedmont Street in Detroit, Michigan. Smith Dep., Dkt. 34-8, PageID.514. In 2015, at the time of the incident, Smith and his IRA owned ten houses, three in Michigan. *Id*. at

PageID.516. Smith did not own the three Michigan properties in his personal capacity, but through his self-directed IRA, which was maintained by Horizon Trust Company. He explained the mechanics of this relationship this way:

> […][It's]to accommodate a self-directed IRA so if I am interested in a piece of property and the funds are there, I ask – fill out the proper forms, they become the owner, all activity associated with the property has to go through them and because it's an IRA, they have to report to the IRS, I'm required to take required – minimum distributions just like you would for any IRA once you're 70 and a half years old.
> All activity in terms of income, the expenses, repairs go through the trust, I have to request – fill out forms for any kind of repairs that are brought to my attention by property management – the property manager sends the funds directly to Horizon Trust, I get a quarterly statement just like any IRA.

Dkt. 34-8, PageID.517.

Smith learned about Horizon Trust and the practice of holding properties in an IRA during an investors seminar called Return on Rents, held in Las Vegas in May 2015. *Id*. at PageID.518–19. Smith directed funds from an existing IRA into a new Horizon Trust IRA, which Horizon Trust then used to purchase four properties (three in Detroit, and one in New York) at Smith's direction. *Id*. at PageID.519. Smith did not visit any of the properties or appraise their actual condition, relying only on the information provided by the Return on Rents representatives. Dkt. 34-8, PageID.519.

Because Smith's IRA is on the deed for the home, and not Smith in his personal capacity, he is restricted from conducting certain activities that a traditional landlord may ordinarily conduct. Dkt. 34-8, PageID.521 ("I'm not allowed to lift a finger to do anything personally, otherwise, it's contributing to my IRA...I can't even drive a nail into the wall to hang a picture[.]"). He was also restricted from using any of his personal funds to make improvements or repairs to the property, because doing so would be adding value to his IRA, which has tax consequences. *Id.*

### b. The pipe

Donald Pratt, a consultant from "Construction Education & Consulting Services of MI," was engaged by Plaintiff to evaluate the pipe. Mr. Pratt provided a report (Dkt.34-1, PageID.369), and deposition testimony about the pipe (Dkt.28-8, PageID.250). In his report, Pratt described the pipe this way:

> ...[A]pproximately 4 inches in diameter partially buried in the ground with approximately 1 inch to 2 inches exposed and protruding out of the ground and above the concrete driveway. Around the exposed edges of the pipe was a depression in the ground, likely caused by soil erosion around the pipe. This condition created a hole which varied in depth from 2 1/2 to 2 5/8 inches in depth. The top of the pipe was jagged and sharp. The top was also irregular with one side of the exposed portion of the pipe being approximately 1 inch above the other. This condition along with the surrounding hole created a significant trip and/or fall hazard[.]

Pratt Final Report, Dkt. 34-1, PageID.371. Pratt also found that the house had never been inspected or registered with the City of Detroit as a rental property. *Id*. Pratt concludes his report by saying that it is his opinion that the "Property owner and/or its maintenance company were responsible for the maintenance of this property[,] and that "they had an obligation to maintain the drive and lawn area in such a way to ensure a safe condition." *Id*. at PageID.375.

During his deposition, Pratt testified that he "determined that that pipe was the water shutoff box from the City water line that I'm believing - - I'm assuming it goes into the house, although I don't know that for a fact." Pratt Deposition, Dkt. 28-8, PageID.262. Pratt testified that the pipe itself was a sleeve that led down to the water shutoff box, and that these sleeves usually have a cap on top. *Id*. at PageID.263 & PageID.270. Pratt testified that he did not think the open pipe on its own was a hazard, but when the open pipe was combined with the recessed and deteriorating concrete surrounding it, a trip hazard would result. Dkt. 28-8, PageID.283. Pratt was not sure whether anyone other than the City of Detroit could fix the pipe, but that he suspected it would be the responsibility of the property owner, because it was located entirely in the property line. *Id*. at PageID.281. Pratt further testified that the state of the concrete, absent consideration of the pipe, was a violation of the Detroit

Property Maintenance Code, and that it was the responsibility of the owner to fix the driveway. *Id*. at PageID.288.

Plaintiff had lived at the property for a period of time before the accident, and the pipe was there the entire time he lived at the home. Smith contends that the pipe was therefore an "open and notorious" hazard, and that Plaintiff's failure to avoid the pipe is his own fault.

### c. Stellar Property Management

Smith contracted with a company called Stellar Property Management ("Stellar") to handle collection of rent, and oversight of most maintenance issues related to this house, as well as the two other Michigan properties he also owns. Dkt. 34-8, PageID.519–20. Smith testified in his deposition that Stellar was supposed to inform him when the property needed a repair or other expenditure, and that he would then direct Horizon Trust to make the payment necessary for that repair, but that he had no other involvement in any aspect of the ongoing management of the property. Dkt. 34-8, PageID.520–23. Smith claims that he did not have any involvement in direct management of the property, nor any knowledge of the state or condition of the property at the time he purchased it or at the time of incident. Smith believes that if anyone was responsible for fixing the pipe, it would have been Stellar. Stellar has not been named in this lawsuit.

Because there are genuine questions of material fact which should be properly submitted to a jury for consideration, Defendant's Motion for Summary Judgment is **DENIED** as to Defendants Richard Smith and Horizon Trust Company FBO Richard Smith IRA, but **GRANTED** as to Defendant Horizon Trust Company.

## III. Standard of Review

### a. Summary Judgment

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

As the movant, the Defendant has the initial burden to show that there is an absence of evidence to support Plaintiff's case. *Selby v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986). If the movant meets that burden, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (non-movant "may not rest upon its mere allegations or denials of the adverse party's pleadings[.]"). In so doing, the non-moving party must present more than "a scintilla of evidence." *Anderson,* 477 U.S. at 252. If the disputed evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50. The Court must determine whether the evidence presents a factual disagreement sufficient to require submission of the claims to a jury, or whether the moving party prevails as a matter of law. *Id.* at 252.

### b. Michigan Property Laws and Liability

In every Michigan lease, the lessor promises that the premises are fit for the use intended, that they will keep the premises in reasonable repair, and comply with the applicable health and safety laws of the state—even if such language is not in the lease agreement. MICH. COMP. LAWS §554.139(a)(b) (2017). The only exception to these covenants is when the "disrepair or violation of the applicable health or safety laws has been caused by the tenant's willful or irresponsible conduct or lack of conduct." *Id.*

Furthermore, every landlord of a property in the City of Detroit is required to obtain a certificate of compliance attesting to the

safety and habitability of a rental property before they can rent it to a lessee. DETROIT, MICH., CODE § 9-1-36 (Int'l Code Council 1999). To obtain a certificate of compliance, the property must be inspected by the Buildings, Safety, Engineering & Environmental Department (BSEED) of the City of Detroit, and the owner of the property must make any corrections or repairs deemed necessary by that department. DETROIT, MICH., CODE § 9-1-36(b) (Int'l Code Council 1999). It is unlawful to rent out a home without a required certificate of compliance. DETROIT, MICH., CODE § 9-1-36(d) (Int'l Code Council 1999).

To establish a claim of negligence, plaintiff must show four elements: (1) the defendant owed a duty to the plaintiff, (2) defendant breached that duty, (3) defendant's breach caused[1] plaintiff's injury, and (4) plaintiff incurred damages. *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (Mich. 2000). Michigan law traditionally recognizes three categories of visitors to a property: trespassers, licensees and invitees. *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 596–97 (Mich. 2000). The duty a landowner owes to those entering his or her land depends upon the status of the visitor. *Id*. In this case, Plaintiff—as an approved tenant—was an invitee, meaning

---

[1] "Causation" is comprised of two elements: (1) cause in fact, and (2) legal or proximate cause. *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (Mich. 2000) citing *Skinner v. Square D Co.,* 445 Mich. 153, 162–163 (Mich. 1994).

the property owner owed the Plaintiff a duty of ordinary care, or a "duty to use reasonable care to protect [him] from an unreasonable risk of harm caused by dangerous conditions on the premises...." *Hoffner v. Lanctoe*, 492 Mich. 450, 455 (2012).

### c. Open and Notorious Doctrine

A premises owner is liable for breach of the duty of ordinary care if the owner "knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Id.* at 460. "However, an integral component of the duty owed to an invitee considers whether a defect is open and obvious." *Id.* (punctuation omitted). "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection. This is an objective standard, calling for an examination of the objective nature of the condition of the premises at issue." *Id.* at 461.

A pothole in a parking lot is an example of an open and obvious hazard. *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 523 (2001) ("[P]otholes in pavement are an everyday occurrence that ordinarily should be observed by a reasonably prudent person."). A landowner does not generally have a duty to protect invitees from open and obvious dangers, but a landowner must take reasonable steps to protect invitees from harm where "special aspects of a condition

make even an open and obvious risk unreasonably dangerous." *Lugo*, 464 Mich. at 517. To determine if special aspects exists, courts must "focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff." *Id.* at 523–24. Special aspects are found when the hazard is unreasonably dangerous, or the hazard is unavoidable. *Id.* at 519. "In either circumstance," the danger must "give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided." *Hoffner*, 492 Mich. at 463.

## IV.  Analysis

Two of the defendants claim that they are wrongly named in this suit, because neither Horizon Trust Company nor Richard Smith (in his personal capacity) owns the Piedmont house, so neither could have rectified the pipe hazard. The Court will address each in turn.

### a. Horizon Trust Company

Horizon Trust Company maintains the retirement account of Smith that includes the property in question. The account is a "self-directed IRA" (SDIRA) which utilizes real estate as an asset. SDIRAs offer the same tax benefits as traditional IRAs and are similarly limited by the same IRS regulations. SDIRAs afford their owners unique investment opportunities, but also come with signif-

icant risks, since those new opportunities bring additional responsibilities. According to the Horizon Trust Company website, both IRAs and SDIRAs "are technically owned by a custodian[.]" But, "A SDIRA is merely held by the custodian, while the account owner takes complete control over all investment decisions. The custodian can offer consultation…but ultimately their role is to act as the bank and also approve any transactions."[2] Indeed, according to the Wayne County Register of Deeds' website, the Piedmont property deed was recorded on June 10, 2015, indicating that NBC Properties LLC transferred the property ownership to "HORIZON TRUST CO CSTDN SMITH RICHARD FBO."[3]

So Horizon Trust Company holds the deed to the property, but that is all they do. They played no part in the selection of the property as part of the portfolio, nor in the selection of Stellar Property Management as a property manager. Furthermore, they play no part in deciding what repairs or improvements to make on the property. All Horizon Trust Company does is disburse funds to Stellar or any other contractor as directed by Smith, and maintain custodianship of the deed as long as Smith directs them to.

---

[2] Horizon Trust Company website, available at:
https://www.horizontrust.com/ira-vs-self-directed-ira-whats-the-difference/
[3] The Wayne County Register of Deeds' free public search function is available at https://www.waynecountylandrecords.com/recorder/eagleweb/custom Search.jsp?pageId=RealEstate

Horizon Trust Company has no responsibility for the maintenance or condition of the property—they could never have been expected to arrange to repair the pipe, or to schedule the required inspection by the BSEED. Because Horizon Trust Company bore no responsibility for maintenance of the property or ensuring the use of the property, they cannot be held liable for this claim. For that reason, Defendant's Motion for Summary Judgment as to Defendant Horizon Trust Company is **GRANTED**.

### b. Richard Smith

The Piedmont house is part of a self-directed IRA for the benefit of Richard Smith and is technically owned by Horizon Trust Company as custodian. But for the reasons laid out below, a reasonable jury could find that Mr. Smith exerted sufficient control over the maintenance and condition of the property to establish that he is in fact the owner, notwithstanding any technicalities of the self-directed IRA. Likewise, a reasonable jury could find that Mr. Smith's alleged negligence as owner of the property was the reason that the open pipe, front door lock, and front porch light were never fixed, resulting in Plaintiff's injury.

*Certificate of Compliance*

The Piedmont home did not have a certificate of compliance from the City of Detroit at the time that Plaintiff lived there. Smith testified that he assumed the house had been registered as a rental

unit with the City before he purchased the home. Smith Deposition, Dkt. 34-8, PageID.520. But Smith also said that he "expect[s] [it's] probably true" that it is the responsibility of the owner to register the property with the City. *Id*. at PageID.521. The management agreement with Stellar for three Detroit properties, including the Piedmont home, contains an addendum setting out the owner's obligation to register the home as a rental unit and arrange for an inspection to ensure that the home is in compliance with "all electrical, mechanical, and plumbing", as well as HVAC code requirements. Dkt. 34-9, PageID.543. This addendum contained three potential "check-boxes" for the owner to indicate his preference as to how to handle the rental license obligation, as indicated below:

# Stellar Properties and Management Group LLC

32540 Schoolcraft Rd. #220, Livonia, MI. 48150
(734) 427-0999 PH  (734) 943-6157 Fax

Date:  May 22nd, 2015

Owner:  Horizon Trust Company Custodian FBO Richard Smith IRA

Properties:
2033 Emmons Ave Warren MI 48091
8014 Hereford St Detroit MI 48224
9400 Piedmont Detroit MI 48228

To comply or remain in compliance with the City/Township of _Detroit/ Wayne_ you must complete and submit an application along with the appropriate application fees to register your rental home(s).  Once the application has been received, a city inspector will schedule to inspect the home to ensure all electrical, mechanical and plumbing are up to code.  In addition, a licensed HVAC company will have to inspect and provide a certificate approving your furnace and its' operations.  There may be repairs associated with these inspections.  If so, a reasonable amount of time will be provided for repair and re-inspection.  Once the inspection is accepted, a license will be issued or reissued.  The license is good for two – three years in most municipalities.

Please sign below acknowledging receipt of this notification and return with appropriate application and furnace inspection fee.

Please Initial One Box:

[✓] I have a valid rental license which is enclosed.

[✓] Enclosed is the application and fee of $_____, please forward on my behalf.

[ ] I will handle registering my own rental property

*There is a $150 fee to have us facilitate, schedule and assist you with your city inspection and repairs .This also includes having us present for your inspection or re inspection.*

Owner will register the rental property in the appropriate municipality and comply with any and all citations that are issued within the designated time period. Agent will assist in facilitating the registration for a fee, but will not be held liable for the lack of registration or any related repairs. Rental property registration fees and repairs are the responsibility of the Owner.

Signature of Owner _____    Date 5/29/15

Mgt. Agt. (3-26-09)

Smith appears to have first checked the box indicating that he had a valid rental license which is enclosed, but crossed that check-

mark out, and then checked the box indicating the he was enclosing the application and the fee, and was asking the management company to forward them on his behalf. Smith signed this agreement—in his personal capacity—and dated it. During a hearing on the Motion for Summary Judgment on August 27, 2018, counsel for Plaintiff represented that he had never seen any documents indicating that Smith had paid the fee or that Stellar or Smith made any attempt to obtain a certificate of compliance. The record is not clear about whether Smith paid the fee for Stellar to arrange the certification, but it was undisputed at the time of the hearing that the Piedmont property had no certificate of compliance.

The Court therefore ordered Defendants to begin the application process for obtaining a certificate of compliance within ten days, and to file an affidavit showing as much. On August 29, 2018, Defendants filed an affidavit from Michelle Goode,[4] who attested that "the application for Registration of Rental Housing for 9400 Piedmont was filed with City of Detroit on August 28, 2018." Dkt. 36.

According to the City of Detroit BSEED's website, there are three steps to obtaining a certificate of compliance: (1) Register the property with BSEED, (2) Schedule an inspection of the property,

---

[4] Ms. Goode's name is spelled as both "Goode" and "Good" in the affidavit, and the company is referred to as "Stellar Realty Group, Inc." instead of Stellar Property and Management Group. Dkt. 36.

and (3) Obtain the certificate.[5] To the Court's knowledge, Defendants have, to date, performed only the first step of this process.[6]

*Smith's Alleged Conduct in Maintaining the Property*

Smith stated during his deposition that he was not allowed to take actions affecting the Piedmont property without violating the rules regarding his self-directed IRA. He explained that he could not do anything that would affect the value of the home without incurring tax consequences. But Stellar Property Manager Michelle Goode contradicted Mr. Smith's position, saying that Mr. Smith had directed Stellar more than once to let him personally handle maintenance and repair issues with the property. Goode Deposition, Dkt. 34-6, PageID.465 ("So per notes the next page indicates that the owner has clearly stated that he will handle his own repairs."); PageID.474 ("[Smith] had his own contractors handling the work so actually we were waiting on him to give us notification.").

Plaintiff's girlfriend, Chanel Colona, dropped Plaintiff off at the Piedmont home on the night when he tripped on the pipe. Colona Deposition, Dkt. 34-7, PageID.497. Colona testified that she remembered a time when the back porch was "cracked up and …

---

[5] Available at: https://detroitmi.gov/departments/buildings-safety-engineering-and-environmental-department/rental-property-information/certificate-compliance/quick-steps-obtain-certificate-compliance

[6] Defendant Smith will therefore be required to provide an update to the Court, by filing a written report, as to whether the additional steps have been completed, and, if they have not, an explanation of the reasons why they have not.

whenever it rained or anything it would leak into the basement." Dkt. 34-7, PageID.502. Colona said that the leak caused "mold all in the basement, and we couldn't utilize the basement bathroom." *Id*. Colona testified that she spoke to Smith about the problem on the phone, and that he told her "he wanted to send his contractor out" to address the repairs. Dkt. 34-7, PageID.502. After speaking with Smith on the phone, a contractor came to the home and inspected the house, and then more contractors came on a later date to fix the back porch. *Id*. at PageID.503.

Considering these facts, a reasonable jury could find that Smith had on several occasions endeavored to repair or improve the property himself, directing Stellar to let him handle these issues himself. A reasonable jury may also conclude that, because Smith did so endeavor, the responsibility to discover and rectify the pipe hazard and other issues lied with him. Finally, a reasonable jury might find that, if Smith failed to arrange for an inspection that could have discovered the pipe problem and caused it to be repaired, this permitted the hazard to remain. Defendants' motion for summary judgment as to defendant Richard Smith is **DENIED**.

### c. Open and Notorious

Defendants claim that they cannot be held liable, because the pipe was an open and obvious hazard. According to the Michigan Supreme Court in *Lugo v. Ameritech Corp.*, "a premises possessor

is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo v. Ameritech Corp.,* 464 Mich. 512, 516 (2001). The Supreme Court then gives an example of when a possessor still owes a duty, even for a hazard that is open and notorious:

> [B]ecause the danger of tripping and falling on a step is generally open and obvious, the failure to warn theory cannot establish liability. However, there may be *special aspects* of these particular steps that make the risk of harm unreasonable, and, accordingly, a failure to remedy the dangerous condition may be found to have breached the duty to keep the premises reasonably safe.

*Lugo*, 464 Mich. at 517 (quoting *Bertrand v. Alan Ford, Inc.,* 449 Mich. 606, 609 (1995) (emphasis in original)). The *Lugo* Court further states,

> the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly "special aspects" of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the "special aspect" of the condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability.

*Id*. at 517–18.

It is undisputed that the pipe was in the same condition at the time that Plaintiff tripped on it as when he first moved in to the home. It is also undisputed that the pipe is clearly visible in most conditions. As such, it is clear that the open pipe was an open and notorious hazard.

Plaintiff argues that a constellation of special aspects rendered the open and notorious pipe unreasonably dangerous. Plaintiff argues that (1) it was late at night and dark, (2) the front porch light was especially dim,[7] (3) the front door lock worked poorly and inconsistently, and (4) the neighborhood was not safe at night. These factors combined to force Plaintiff to use the back door instead of the front door of his home, which required that he walk up the driveway. The factors also combined to create a scenario in which the otherwise open and notorious pipe hazard was likely obscured. A reasonable jury could find that this scenario engendered "special aspects" that except it from the open and notorious doctrine. *See Lugo*, 464 Mich. at 517.

The Court finds that there is a genuine issue of material fact regarding whether there are "special aspects" of the open and obvious doctrine, and whether those "special aspects" impose liability upon the defendant. For this reason, defendant's Motion for Summary as

---

[7] "There is no streetlight like in front of the property…. I did have [a front porch light], but it wasn't really bright. It was very dim. They were supposed to fix that as well." Jones Deposition, Dkt. 28-5, PageID.231.

to defendants Richard Smith and Horizon Trust Company FBO Richard Smith IRA is **DENIED**.

### d. Duty to fix the pipe

"It is a general proposition that liability for an injury due to defective premises ordinarily depends upon power to prevent the injury and therefore rests primarily upon him who has control and possession." *Kubczak v. Chem. Bank & Tr. Co.*, 456 Mich. 653, 662 (1998) (quoting *Nezworski v. Mazanec,* 301 Mich. 43, 56 (1942)). "Possession" is defined as "the right under which one may exercise control over something to the exclusion of all others." *Derbabian v. S & C Snowplowing, Inc.,* 249 Mich. App. 695, 702 (Mich. 2002). "[I]t is appropriate to impose liability on the person who created the dangerous condition or who had knowledge of and was in a position to eliminate the dangerous condition." *Kubczak*, 456 Mich. at *id.*

Defendants claim that not only did they not have a duty to fix the pipe, but that it would have been illegal for them to do so. Dkt. 28-1, PageID.142 ("Therefore, Defendants not only had no legal duty to alter the pipe, but the Michigan Penal Code forbade the Defendants from doing so."). They contend that the pipe is an easement from the City, and therefore if anyone had a duty to fix the pipe, it was the City itself. *Id*. at PageID.141 ("A landlord cannot be 'responsible for the maintenance' of an area that he or she has no

legal right to enter or alter.") (quoting *Allison v. AEW Capital Mgmt., L.L.P.*, 481 Mich. 419, 427 (Mich. 2008)).

Defendants' reasoning here is tenuous. First, though neither Plaintiff nor Defendants dispute that the pipe is very likely property of the City of Detroit, none of the Defendants have ever taken any steps to have the City come to the property to confirm this. Furthermore, even if it is true that only the City can fix the pipe, that does not mean defendants had no duty to inform the City of an unsafe hazard, and request the City to repair it. Moreover, Defendants acknowledge their obligation to abide City ordinance relating to having the home inspected and certified. Here, no certification was sought and therefore no inspection took place. Had Smith complied with the Detroit ordinance requiring the certificate of compliance, the City would have been permitted to discover the pipe defect and fix it, possibly preventing the incident from occurring at all. There is evidence in the record that Smith took responsibility for conducting some repairs even though he had contracted with Stellar to do so. Thus, a reasonable jury could conclude that Smith has also taken on the responsibility of fixing the pipe or alerting the city to the pipe hazard.

### e. Horizon Trust Company FBO Richard Smith IRA

As mentioned above, the deed for the Piedmont Home lists "HORIZON TRUST CO CSTDN SMITH RICHARD FBO" (Smith's

SDIRA) as the owner of the home. Because the SDIRA is the actual owner, a factual issue exists as to whether the SDIRA may be liable for injuries that occur as the result of alleged negligence by the person who benefits from the IRA. A reasonable jury could find that, as the holder of the deed and actual owner of the property, the SDIRA was also the "owner" of the home for purposes of ensuring the safety of the premises. As such, the motion for summary judgment as to Horizon Trust Company FBO Richard Smith IRA is **DENIED**.

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** in part as to Horizon Trust Company and **DENIED** in part as to Richard Smith, and Horizon Trust Company FBO Richard Smith IRA.

**IT IS FURTHER ORDERED THAT** Defendant Richard Smith shall submit a written report to the Court recounting the steps that have been taken to obtain a certificate of compliance for the 9400 Piedmont property, including whether an inspection of the property has taken place and whether a certificate of compliance has been obtained. If neither an inspection nor a certificate has been obtained, Defendant Richard Smith must **SHOW CAUSE** why they

have not been obtained. This submission must be filed within seven (7) days of the date of this Order.

**SO ORDERED.**

Dated: February 21, 2019

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

**Certificate of Service**

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on February 21, 2019.

s/A. Chubb
Case Manager